Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Stephen Gnandt*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Gnandt, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Lincoln National Life Insurance Company, Calpine Corporation, Group Long Term Disability Plan for Employees of Calpine Corporation, | |
| Defendants. | |

Now comes the Plaintiff Stephen Gnandt (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2. Plaintiff is a resident of Mohave County, Arizona.

3. Upon information and belief, Defendant Calpine Corporation (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured by Jefferson Pilot Financial Insurance Company (hereinafter referred to as "Jefferson").  Upon information and belief, Jefferson is an entity who was later purchased by Lincoln National Life Insurance Company (hereinafter referred to as "Lincoln") or in the alternative, the specific Jefferson policy was purchased and administered by Lincoln.  The specific Jefferson policy is known as group policy 00086005881100000.  The Company's purpose in sponsoring, administering and purchasing the Jefferson policy was to provide disability insurance for its employees.  Upon information and belief, the Jefferson policy may have been included in and part of an employee benefit plan, specifically named the Group Long Term Disability Plan for Employees of Calpine Corporation (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Lincoln merged with Jefferson on or around July 2, 2007.  During the processing of Plaintiff's claim and appeals, Lincoln sometimes corresponded with Plaintiff through letterhead in the name of Jefferson.  Plaintiff will refer to all correspondence herein as coming from Lincoln, including all correspondence on Jefferson letterhead.

5. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Lincoln. Plaintiff believes that as it relates to his claim, Lincoln functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

6. Upon information and belief, Plaintiff believes Lincoln operated under a conflict of interest in evaluating his claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Lincoln's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

7. The Company, Plan and Lincoln conduct business within Maricopa County and the events giving rise to this Complaint occurred within Maricopa and Mohave County.

*Venue*

8. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

9. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

10. After working for the Company as a loyal employee, Plaintiff became disabled on or about October 4, 2004 due to serious medical conditions and was unable to work in his designated occupation as a Power Plant Operator. Plaintiff has remained

disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

11. Following his disability, Plaintiff applied for short term disability benefits which were approved and have been exhausted.

12. Plaintiff then applied for long term disability benefits under the relevant Lincoln policy. The relevant long term disability policy provides the following definition of disability:

> Total Disability or Totally Disabled will be defined as follows:
> - During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation;
> - After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow.

13. In support of his claim for long term disability benefits, Plaintiff submitted to Lincoln medical records from his treating physicians supporting his disability as defined by the relevant Lincoln policy.

14. Shortly thereafter, Lincoln notified Plaintiff it was approving his claim for long term disability benefits effective April 3, 2005.

15. In a letter dated February 15, 2011, Lincoln informed Plaintiff it was terminating benefits beyond February 3, 2011 due to a lack of medical documentation supporting his inability to work in any occupation.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the February 15, 2011 termination of his long term disability benefits by a letter dated August 1, 2011. In support of his appeal, Plaintiff submitted to Lincoln additional medical, vocational and lay witness

evidence demonstrating he met any definition of disability set forth in the relevant Lincoln policy.

17. In support of his appeal, Plaintiff submitted to Lincoln a narrative letter dated August 7, 2011 from his current treating neurological surgeon and pain medicine physician who confirmed, "[Plaintiff's] injury is legitimate. He has undertaken the risk of surgical correction with less than optimal or symptomatically satisfying results. I agree he has been unable to gainfully work since 10/04" and responded "yes" when asked to address whether it was his medical opinion Plaintiff "will be unable to sustain any gainful employment indefinitely."

18. Plaintiff also submitted to Lincoln a narrative letter authored by his treating board certified family physician, who opined "…[Plaintiff] is incapable of performing any work even at the sedentary work level…I feel that [Plaintiff] is unlikely to ever be able to return to work in any capacity."

19. As additional development of his claim, Plaintiff underwent an Independent Medical Examination with a physician who is board certified in physical medicine and rehabilitation as well as pain medicine. After examining Plaintiff and reviewing the medical documentation submitted to Lincoln, the independent examiner concluded, "After a review of the patient's history, physical examination and medical records, [Plaintiff] is incapable of sustained gainful employment."

20. In further support of his appeal, Plaintiff submitted to Lincoln a Functional Capacity Evaluation Report dated April 26, 2011 which determined after an evaluation of Plaintiff's serious medical conditions that "Based on a reasonable degree of medical certainty, my opinion is [Plaintiff] would not be able to perform <u>sedentary work</u> consistently on a regular, full-time basis" (original emphasis).

21. Further supporting his appeal, Plaintiff submitted to Lincoln a vocational report from a certified vocational expert dated August 11, 2011. The vocational expert concluded, "Based upon my interview of [Plaintiff] and review of the medical records, I conclude that he is unable to engage in any gainful employment as a result of his limitations and work restrictions as delineated by his treating physicians, the independent examiner and Physical Therapist as observed during the functional capacity evaluation of April 26, 2011…I conclude based upon the medical record and statement by Dr. Mitchell that he has been unable to work in any capacity since October 2004."

22. In addition to the medical records and reports submitted to Lincoln, Plaintiff also submitted an August 2, 2011 sworn affidavit from his long time friend and prior co-worker who confirmed it is his opinion "…I believe [Plaintiff] is unable to work in any occupation."

23. During the administrative review of Plaintiff's claim, he applied for and received Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

24. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of February 16, 2006. Plaintiff submitted to Lincoln a copy of his August 25, 2011 Notice of Decision – Fully Favorable and December 10, 2011 Notice of Award from the Social Security Administration.

25. The SSA's definition of disability is significantly more limiting than the aforementioned definition of disability in the Lincoln policy for the first 36 months of disability and substantially similar to the policy's definition of disability after the first 36 months of disability. Therefore, the SSA's approval is relevant evidence for this Court to

consider with regard to the lawfulness of Lincoln's decision to terminate Plaintiff's benefits beyond February 3, 2011 and ignoring the SSA's determination.

26. As part of its review of Plaintiff's claim for long term disability benefits, Lincoln obtained two medical records only "paper reviews" of Plaintiff's claim from Phillip Marion, M.D., who is a medical consultant for Reliable Review Services (hereinafter referred to as "RRS") and William Sniger, M.D. Upon information and belief, Plaintiff believes Drs. Marion and Sniger are long time consultants for the disability insurance industry and Lincoln. Plaintiff further alleges Drs. Marion and Sniger have an incentive to protect their own consulting relationships with the disability insurance industry and Lincoln by providing medical record only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Lincoln and which supported the denial of Plaintiff's claim.

27. In a letter dated October 11, 2011, Lincoln notified Plaintiff it had denied his appeal for long term disability benefits under the Lincoln policy.

28. Plaintiff timely appealed Lincoln's denial of his claim in a letter dated November 30, 2011. In support of his claim for disability benefits, in a letter dated January 19, 2012 Plaintiff submitted to Lincoln information regarding Dr. Marion which he believes confirms Dr. Marion earns a significant amount of his yearly income from performing peer review reports for the disability insurance industry. In addition, the information submitted to Lincoln proves Dr. Marion has been criticized by the Courts for his opinions that claimants do not meet the relevant definitions of disability, or their file does not contain "objective medical evidence," as occurred in Plaintiff's claim.

29. In Plaintiff's January 19, 2012 letter he further requested Lincoln investigate the number of reviews Dr. Marion has completed and the percent of income he receives on

a yearly basis for such work with the disability insurance industry, it does not appear Lincoln did this.

30.   Notwithstanding the evidence submitted by Plaintiff supporting his disability claim, Lincoln notified Plaintiff in a letter dated June 19, 2012 it was upholding the denial of his claim and he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

31.   When it denied his claim, Lincoln failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff and/or his treating physicians in a dialogue during the appeal with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim.  Lincoln's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

32.   Upon information and belief,  Lincoln denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to: failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the combination of those diagnoses and impairments, failing to obtain an Independent Medical Examination when the policy allowed for one and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

33.   Plaintiff further believes Lincoln violated ERISA by failing to adequately consider the approval of his SSA claim.  Plaintiff believes Lincoln should have evaluated and/or applied significant weight to the Social Security Administration's decision pursuant to *Metro. Life Ins. v. Glenn,* 128 S. Ct. 2343 (U.S. 2008) and *Montour v. Hartford Life &*

*Acc. Inc. Co.,* 588 F.3d 623 (9th Cir. 2009) by comparing and contrasting why Lincoln's decision was different than SSA's.

34. In evaluating Plaintiff's claim on appeal, Lincoln had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do. [1]

35. Plaintiff believes the reason Lincoln provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Lincoln undertook as decision maker and payor of benefits which created an inherent conflict of interest. Plaintiff believes Lincoln's conflict of interest is evident in the fact that it approved his short term disability claim and paid the maximum short term disability benefits as well as many years of long term disability benefits, but then terminated his long term disability benefits even though Plaintiff's medical diagnoses and limitations had not changed. Due to its conflict of interest, when Lincoln terminated Plaintiff's long term disability claim it saved a significant sum of money.

36. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Lincoln and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Lincoln's decision to deny his claim.

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

37. With regard to whether Plaintiff meets the definition of disability set forth in the Lincoln policy, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review.

38. As a direct result of Lincoln's decision to deny Plaintiff's disability claim he has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include health insurance, a life insurance policy and/or a waiver of his life insurance premium.

39. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

40. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' unjustified termination of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the policy or Plan from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee benefits he may be entitled to from the Plan and/or Company as a result of being found disabled;

1         B.      For an Order finding that Plaintiff meets any definition of disability set forth in the relevant Lincoln policy and directing Defendants to continue paying Plaintiff the aforementioned benefits until such time he meets the conditions for termination of benefits;

      C.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

      D.      For such other and further relief as the Court deems just and proper.

DATED this 20th day of August, 2012.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff

-11-